UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Timothy Green and
Mary Ellen Green,

Chapter 7
Case No. 07-22010-svk

        Debtors.

Paul Swanson, Trustee,

        Plaintiff,

v.

Adv. No. 07-2173

Timothy Green and
Mary Ellen Green,

        Defendants.

Decision and Order Denying Discharge

      An adversary trial was held on December 14, 2007 on the Chapter 7 Trustee's Complaint Objecting to the Discharge of Timothy and Mary Ellen Green under 11 U.S.C. § 727(a)(2) and (a)(4)(A). Paul Swanson, the Chapter 7 Trustee appeared along with Attorney Neil McKloskey, who represents Mary Green's mother, who claims to be an unsecured creditor owed over $1,000,000. Timothy and Mary Ellen Green appeared with their attorney, David Clowers.

      The issue in this adversary proceeding is whether the Debtors concealed certain personal property with the intent to hinder, delay or defraud the Chapter 7 Trustee under § 727(a)(2) and/or made a false oath with respect to the property under § 727(a)(4)(A). Although the Court found the decision very difficult in light of the Debtors' sincerity and demeanor and an expert's report indicating the Mrs. Green suffers from severe depression, at the conclusion of the trial, the Court concluded that the Trustee carried his burden of proof, and held that the discharge should be denied.

Facts

    The Debtors filed a voluntary Chapter 7 petition on March 26, 2007. The Debtors own but failed to list in their bankruptcy schedules their collections of Beanie Babies, Disney pins and figurines, sports memorabilia and other miscellaneous collectibles. According to the Trustee's testimony, the Debtors did not mention the collectibles in question at the § 341 meeting until they were asked about them by Attorney McKloskey on behalf of Mrs. Green's mother. Even after discussing the collectibles at the meeting, and at least two visits from the Trustee to their home where the bulk of the collections were stored, the Debtors made no attempt to amend the

schedules to account for this property. This omission significant, as the Trustee testified that boxes of Beanie Babies, pins and other miscellaneous collectibles were stacked in the Debtors' house, filling rooms, the garage, a pole barn and Mrs. Green's mother's pole barn. Inside their house, the boxes were stacked such that there were only narrow paths through the boxes. The Trustee and his liquidator testified that portions of the Debtors' house were inaccessible because of the volume of stacked boxes and crates of collectibles. The Debtors' attorney stated that when he saw the Debtors' house for the first time, he thought that they must be moving because of the boxes stacked everywhere. Mrs. Green testfied that she felt she was depressed for a long time, and coped by shopping. She then never threw away anything she bought. The Debtors introduced an expert report from a psychologist who examined Mrs. Green and diagnosed her with Major Depressive Disorder and Personality Disorder evidenced by her hoarding behavior in the collection of the sentimental items and inability to discard them.

Mrs. Green testified that she purchased the collectibles using the internet, traveling to Disney World and visiting stores. The most she could recall spending on a single item was $25 for a Disney pin. She received a great deal of the money to purchase the Beanie Babies and other collectibles from her mother. When asked why she did not list the items in her bankruptcy schedules, Mrs. Green said she did not believe that they would be of value to anyone else. They were not what she considered "collections" such as art and antiques that would be required to be listed as an asset, and Mrs. Green was really not aware of how to itemize or describe the collections. Mr. Green testified that he was not aware of the magnitude of his wife's collections. However, Mr. Green lived in a house in which doors to the second floor were blocked by boxes of items, and the basement and garage were inaccessible without moving boxes, but he never questioned the omission of these items from the schedules.

The Trustee's liquidator hauled away five 24-foot box truck loads of items (including Beanie Babies, plush dolls, sports cards and Disney pins) that filled 30 to 40 pallets in his Chicago warehouse. Even with this purge, there are still more boxes at the Debtors' property which the Trustee intends to hire a flea market operator to remove and liquidate. The Chicago liquidator is in the process of selling the property that he removed. He has liquidated 11,000 Beanie Babies and about 50% of the Disney collectibles. On gross sales of $88,000, he has already remitted $47,000 to the bankruptcy estate and estimates total gross sales will reach about $200,000. He testified that one item of Disney memorabilia fetched $2,000. The liquidator also testified that Mrs. Green was a known collector of Disney pins, as his clients recognized the collections he was selling as once belonging to her.

Analysis

The Trustee argues that the Debtors knowingly and fraudulently failed to disclose property described as "collectibles" and "memorabilia" in their sworn bankruptcy schedules and under oath at the § 341 meeting in violation of 11 U.S.C. § 727(a)(2) and (4)(A). The Trustee alleges that the property is of substantial value and its concealment was made with the intent to "hinder, delay and defraud the creditors and the Trustee."

Section 727(a)(2) of the Bankruptcy Code has two elements: (1) the debtor's transfer or concealment of property within one year of the bankruptcy petition, and (2) the debtor's subjective intent to hinder, delay and defraud creditors by disposing of or concealing the property. *Fiala v. Lindemann (In re Lindemann),* 375 B.R. 450, 465 (Bankr. N.D. Ill. 2007). The

2

Trustee must prove intent to hinder, delay or defraud by a preponderance of the evidence. *Clean Cut Tree Serv. v. Costello (In re Costello),* 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). The Trustee contends that the Debtors concealed their collectibles and memorabilia to hinder or defraud the creditors and Trustee.

A concealment consists of "failing or refusing to divulge information to which creditors were entitled." *In re Lindemann,* 375 B.R. at 465 (internal citation omitted). Concealment also refers to "preventing discovery." *Id.* In determining whether a debtor acted with intent to defraud under § 727(a)(2) the court must consider the "whole pattern of conduct." *In re Costello,* 299 B.R. at 895.

Bankruptcy Code § 727(a)(4)(A) provides that "the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." The Trustee has the burden of proof, and "§ 727 is strictly construed against the objecting creditor and liberally in favor of the debtor, in order to protect the debtor's fresh start." *Norton v. Cole (In re Cole),* 2007 Bankr. LEXIS 3929 (Bankr. N.D. Ill. Nov. 15, 2007) (citing *Bank of India v. Sapru (In re Sapru),* 127 B.R. 306, 314 (Bankr. E.D.N.Y 1991).

In order to prevail under § 727(a)(4)(A), the Trustee must establish the following elements: (1) the Debtors made a false statement under oath; (2) the statement was false; (3) the Debtors knew the statement was false; (4) the Debtors made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *See* 11 U.S.C. § 727(a)(4); *In re Cole,* 2007 Bankr. LEXIS 3929; *Structured Asset Serv., LLC v. Self (In re Self),* 325 B.R. 224, 225 (Bankr. N.D. Ill. 2005).

The first element of § 727(a)(4)(A) is met in this case as the Debtors failed to disclose the collectibles in their schedules and at the § 341 meeting. False oaths include statements or omissions in a debtor's schedules. *See In re Self,* 325 B.R. at 245.

The Trustee also satisfied the second and third requirements of § 727(a)(4)(A), that the Debtors' statements were false and knowingly made. Courts have held that a knowing and fraudulent omission can constitute a false oath. *In re Self,* 325 B.R. at 244; *Rafool v. Wilson (In re Wilson),* 290 B.R. 333, 337 (Bankr. C.D. Ill. 2002); *Britton Motor Sev., Inc. v. Krich (In re Krich),* 97 B.R. 919 (Bankr. N.D. Ill. 1988). In this case, both of the Debtors were aware of Mrs. Green's possession of the collectibles, although they admittedly did not have an inventory of each and every item. The Debtors' failure to make some mention of this volume of personal property which they admitted was owned by Mrs. Green, constitutes a knowing misrepresentation. If a complete inventory was impossible, some general description, such as "large amount of Beanie Babies and Disney collectibles of unknown value," would have sufficed. Moreover, after the Trustee discovered the collections, the Debtors still made no attempt to amend their schedules to list this property. This is evidence of their misrepresentation concerning this property.

Based upon the testimony of the liquidator, the collections that the Debtors failed to disclose amounted to 30-40 pallets of items. The liquidator has already collected $47,000 for the bankruptcy estate and estimates total sales will reach about $200,000. In light of the magnitude of the property, the Debtors' failure to list or immediately disclose the assets in question is clearly not the result of mere inadvertence. The Debtors testified that they knew about the

3

property but chose not to list it because they did not believe it had value to anyone else. The Seventh Circuit imposes upon debtors an "absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate." *In re Self,* 325 B.R. at 246 (citing *In re Yonikus,* 974 F.2d 901, 904 (7th Cir. 1992)). In other words, the Debtors cannot defend their *knowing* omissions and misrepresentations by claiming that the property in question is worthless. "There comes a point where aggregate errors and omissions cross the line," and in this particular situation, the court finds the Debtors' failure to list or mention the collections constitutes a knowing misrepresentation and concealment. *See In re Costello,* 299 B.R. at 900.

The Trustee proved the element of materiality with ease. The Debtors failed to disclose a massive accumulation of collectibles and memorabilia. The Trustee met his burden of proving that these non-disclosures "bear a relationship to the bankrupt's estate, and concern the discovery of assets." *In re Self,* 325 B.R. at 249. It is clear from the testimony that the shear volume of items concealed by the Debtors is material to the bankruptcy estate.

The most troubling element is whether the Debtors intentionally failed to list the collectibles in order to defraud their creditors. The Trustee argued that in one instance, Mrs. Green removed a box of valuable pins, and did not return them until the Trustee asked about them. Also, according to the Trustee, the Debtors' failure to amend their schedules once the collections came to light is evidence of their fraudulent intent. Mrs. Green stated that she only took the box of pins because she liked them, and she put them back as soon as she was requested. Both Mr. and Mrs. Green testified sincerely that they did not intend to defraud anyone by failing to list the collectibles in their bankruptcy schedules. Their attorney argued that Mrs. Green's mental condition militates against her forming the requisite intent to mislead the Trustee, that she was simply unable to provide an inventory of the collections and truly believed they only had value to her. However, it is difficult for the Court to reconcile that Mrs. Green testified to using the internet, traveling to Disney World and specifically visiting stores to purchase the items in question. Furthermore, the liquidator testified that Mrs. Green was a known collector of Disney memorabilia, as his clients recognized the collections he was selling as belonging to her. Given that Mrs. Green was a recognized collector and admitted to paying money for the things she accumulated, her contention that she didn't know she owned collectibles of value is not plausible. Rather, it was clear that she understood enough about the items that at some point she must have realized the need to disclose them. Mr. Green lived in a home in which he passed through tunnels of boxes of stuff, yet he never questioned that the items were not listed in his sworn bankruptcy schedules. Since the Debtors could have given a general description of the collections and listed the value as "unknown," it appears that by failing to list them at all, they intended to keep them from the Bankruptcy Trustee.

Upon consideration of the evidence presented by the Trustee, this Court finds that the Debtors "knowingly intended to defraud or engaged in a behavior that displayed a reckless disregard for the truth." *In re Self,* 325 B.R. at 248 (citing *In re Yonikus,* 974 F.2d at 905). The Debtors' failure to disclose their collections with a projected value of $200,000 beyond the items listed in Schedule B valued at $3,500 crossed the line from inadvertence to intentional fraudulent concealment. *See Blomberg v. Riley ( In re Riley),* 351 B.R. 662 (E.D. Wis. 2006) (failure to disclose property that the debtor knew had significant personal value constituted intent to defraud); *Netherton v. Baker (In re Baker),* 205 B.R. 125 (Bankr. N.D. Ill. 1997) (failure to disclose tropical fish hobby and assets including 100 fish tanks crossed the line).

4

Conclusion

  This situation presents a very unique, extremely difficult and close case. Mrs. Green purchased massive amounts of stuff over twenty years, and did not discard any of it. Her mother assisted her in purchasing and paying for many of the items, but at some point, her mother stopped assisting the Debtors, and they were forced to file bankruptcy. Rather than describing this large volume of collectibles in general terms on the bankruptcy schedules, the Debtors simply omitted any mention of it. Even if the Debtors were unsure or dubious of their property's specific value, they could have avoided this situation by simply valuing it as "unknown." An entry of "unknown property" on the schedules would provide at least some sort of indication that their stockpile of miscellaneous articles existed, as not every single item needed to be individually scheduled and valued. Furthermore, the fact that the Debtors have since cooperated and allowed the Trustee to sell the collectibles does not compensate for the fact that they did not list this property in the schedules and never amended the schedules to account for it.

   IT IS THEREFORE ORDERED: that the discharge of the Debtors, Timothy and Mary Ellen Green is denied under § 727(a)(2) and (a)(4)(A) of the Bankruptcy Code.

Date: December 21, 2007

          By the Court:

          */s/ Susan Kelley*
          Susan V. Kelley
          U.S. Bankruptcy Judge